J-S01022-24

2024 PA Super 36

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERTO RIVERA, JR. | : | |
| | : | |
| Appellant | : | No. 538 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 13, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000638-2022

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.: **FILED: MARCH 4, 2024**

Alberto Rivera, Jr. appeals from the judgment of sentence entered after he was convicted of persons not to possess firearms, firearms not to be carried without a license, and possession of a small amount of marijuana.[1] He challenges the denial of his motion to suppress evidence. We affirm.

On Thanksgiving morning, 2021, Lancaster City Police Officer Joseph Graczyk arrested and charged Rivera for illegally possessing a gun. The above counts were held for court. On July 19, 2022, Rivera moved to suppress "the fruits of Officer Graczyk's illegal detention" of him. (He also moved to suppress the statements he made after his allegedly unlawful arrest.)

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 35 P.S. § 780-113(a)(31).

The suppression court heard the matter on October 13, 2022. The court later recounted the following facts from Officer Graczyk's testimony.[2]

On November 25, 2021, Officer Graczyk was dispatched to a car accident on the 200 block of Park Avenue following an eyewitness report that two vehicles had been struck by another vehicle. On cross-examination, Officer Graczyk clarified that the eyewitness saw two vehicles on the sidewalk but did not see the actual collision. Upon arrival, Officer Graczyk began to check the entire block for any additional damaged vehicles. While driving in his car, he noticed a gold Lexus sedan with Pennsylvania registration [] that was damaged on the driver's side rear bumper. The vehicle was located about 25 to 30 yards from where the vehicles were on the curb.

Officer Graczyk got out of his vehicle to inspect the Lexus for additional damage and saw a male sitting in the driver's seat "completely slumped over." During his testimony, Officer Graczyk identified the defendant, Alberto Rivera, Jr., as the male sitting in the vehicle. Officer Graczyk noted that Rivera's "whole body was slumped forward, [with] his hands hanging down between his legs and his head on the steering wheel." Based on his experience with overdosed individuals, Officer Graczyk was concerned about Rivera's physical condition and was "unaware if he was breathing, was still alive, [or] if he needed any further assistance."

On cross-examination, Officer Graczyk testified that he could eventually see that Rivera was breathing and did not appear to have any skin discoloration. He explained that he looked at Rivera's hands to look for discoloration to make sure Rivera was not deceased. As he "looked inside the vehicle, standing up straight looking down through the window of the driver's side

---

[2] By rule, a suppression court must enter findings of fact and conclusions of law on the record at the conclusion of a suppression hearing. Pa.R.Crim.P. 581(I); *see Commonwealth v. Sharaif*, 205 A.3d 1286, 1289 (Pa. Super. 2019). Although "a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing," appellate review may be possible based on facts in an opinion in support of an order on appeal. *Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003).

door, looking at [his] hands, [Officer Graczyk] could see the firearm clearly lying on the floor."

Officer Graczyk described the firearm as a "Glock semi-automatic pistol laying on the floorboard right about six inches from [Rivera's] hands. He said that the entirety of the pistol was in plain view on the floorboards. Officer Graczyk could see a magazine in the firearm but could not tell if the chamber was loaded. He could also see "a metal tray sitting on the center console armrest that had a large amount of marijuana in it." Officer Graczyk suspected it to be marijuana based on his experience and familiarity with the substance as a police officer. He did not see any paraphernalia such as needles, spoons, or pipes near the marijuana, nor could he smell it. Officer Graczyk stated that it appeared to be just a small amount of marijuana for personal use.

Officer Graczyk called for backup, and when the other officers arrived, he told them what he saw, and they opened the unlocked driver's side door of the vehicle. Immediately after opening the door, Officer Graczyk removed the firearm from the vehicle, and the other officers assisted in removing Rivera from the vehicle. The officers identified themselves once Rivera began to wake up and become aware of what was going on. Officer Graczyk stated that at that point, Rivera would not have been free to go because of the "unholstered firearm in the vehicle at his feet." Officer Graczyk's purpose for detention was "to determine whether or not [Rivera] was legally allowed to own that pistol and if he had a concealed firearm license." Rivera was placed in handcuffs and detained . . . .

Without advising Rivera of his *Miranda* rights, [Officer Graczyk] asked Rivera for his name and whether he had a permit to carry a concealed firearm. Rivera answered both questions truthfully and informed the officer that he did not have a permit to carry a concealed firearm. Officer Graczyk followed up by asking Rivera if the reason that he did not have a permit was due to a prior criminal conviction, which Rivera confirmed. When asked why he appeared to be asleep in the car, Rivera said it was because he was currently homeless, and his ex-girlfriend was allowing him to sleep in the vehicle. At that point, Officer Graczyk took Rivera into custody based on his possession of the firearm.

After Rivera was transported to the police station, Officer Graczyk called Rivera's girlfriend . . . . When [she] arrived on the

scene, the vehicle and keys were released to her after the marijuana was removed from the vehicle. The marijuana was eventually field-tested and weighed, and it was determined to weigh 9 oz.

Suppression Court Opinion, 6/12/23, at 2–4 (record citations omitted).

The suppression court denied Rivera's motion to suppress. The case proceeded to a stipulated bench trial on March 13, 2023. The court found Rivera guilty of the above offenses. It sentenced Rivera to an aggregate term of 5 to 10 years of imprisonment.

Rivera timely appealed. Rivera and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Rivera presents the following question for this Court's review:

Did the trial court err in denying the Motion to Suppress the fruits of Mr. Rivera's illegal detention, where his detention was unsupported by reasonable suspicion or probable cause and was in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Constitution of Pennsylvania?

Rivera's Brief at 6.

Rivera characterizes his encounter with the police as an investigative detention. He argues that the investigative detention was unconstitutional because Officer Graczyk's observations did not provide reasonable suspicion that Rivera was involved in criminal activity. Specifically, Rivera notes that case law limits police ability to detain individuals for merely possessing items that Pennsylvanians can be licensed to possess. *See Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021) (marijuana); *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019) (firearms). Rivera submits that here, where Officer

Graczyk saw only a pistol and marijuana, the totality of the circumstances did not support a reasonable suspicion of criminal activity. Additionally, Rivera disputes the suppression court's reliance on Officer Graczyk's initial testimony that the amount of marijuana he saw was "large," as the marijuana was later tested to weigh 9 ounces.

The Commonwealth distinguishes **Hicks** and **Barr** because Rivera did not just possess marijuana or a gun—he possessed both. The Commonwealth contends that under applicable law, a person cannot be licensed to carry a firearm while simultaneously possessing a medical marijuana card. Further, the Commonwealth points to other circumstances that contributed to Officer Graczyk's suspicion, such as Rivera sleeping in a parked car and the marijuana appearing to be kept in a manner inconsistent with legal medical use. The Commonwealth thus argues that under the totality of the circumstances viewed by a trained officer, Officer Graczyk had reasonable suspicion to investigate Rivera.

This Court, in reviewing the denial of a motion to suppress evidence, determines whether the record supports the findings of fact and whether the suppression court's legal conclusions are correct. **Commonwealth v. McFarland**, 278 A.3d 369, 377 (Pa. Super. 2022) (citing **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017)).

> We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the

evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Id.*

The United States and Pennsylvania Constitutions protect against unreasonable searches and seizures. ***Commonwealth v. Cunningham***, 287 A.3d 1, 7 (Pa. Super. 2022). Our courts categorize police–citizen encounters to find whether an officer unreasonably seized a person. *Id.* at 7–8. Relevant here, an investigative detention must be supported by "reasonable suspicion that criminal activity is afoot." *Id.* at 8.

To assess reasonable suspicion, we consider the totality of the circumstances known to the officer at the time of the investigative detention. ***Hicks***, 208 A.3d at 927. We have explained:

> In determining whether police had reasonable suspicion to initiate an investigative detention, the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate.
>
> This Court has recognized reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.
>
> To demonstrate reasonable suspicion, the detaining officer must articulate something more than an inchoate and unparticularized suspicion or hunch. To determine whether reasonable suspicion exists, we examine the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen.

***Cunningham***, 287 A.3d at 8–9 (formatting altered, citations omitted).

In Pennsylvania, where many citizens are licensed to carry concealed firearms, gun possession alone does not provide reasonable suspicion of a crime. *Hicks*, 208 A.3d at 937. "Absent some other circumstances giving rise to a suspicion of criminality, a seizure [based only on carrying a firearm] is unreasonable." *Id.* at 945.

Likewise, because Pennsylvania allows certain individuals to possess and use marijuana for medical purposes, the fact that a person has marijuana, without any other facts, does not provide probable cause for a search. *Barr*, 266 A.3d at 43. However, "consistent with the reasoning in *Hicks*, the lawful possession and use of marijuana, in conjunction with other articulable facts supporting a finding of probable cause, may be considered in the requisite analysis of the totality of the circumstances." *Id.*; *see also Cunningham*, 287 A.3d at 9–10 (applying *Barr* to a reasonable-suspicion analysis).

Here, we initially address the factual finding that the Officer Graczyk observed a "large amount of marijuana." N.T., 10/13/22, at 10. The officer also estimated that it was "[j]ust a small amount for personal use." *Id.* at 12. The suppression court acknowledged both descriptions and credited the first description as a "large," "notable amount" of marijuana. Suppression Court Opinion, 6/12/23, at 3, 10–11. The court was free to do so, given a discrepancy that was "not material." *Commonwealth v. Fudge*, 213 A.3d 321, 327 (Pa. Super. 2019). What drives the analysis in this case is that Rivera appeared to possess unpackaged marijuana, not the quantity of marijuana that he appeared to have.

The key facts are that while Officer Graczyk checked to see if Rivera needed medical assistance, he saw both a Glock pistol and a metal tray with marijuana in the car. Because the gun was in a vehicle, Rivera would need a license to carry it. 18 Pa.C.S.A. § 6106(a)(1). Although the firearm alone, or the marijuana alone, would not warrant police intrusion, the presence of both justified further investigation. Significantly, the marijuana was unpackaged, which suggested that it was not medical marijuana. **See** 35 P.S. § 10231.303(b)(6) (requiring medical marijuana to be kept in its original packaging). The presence of the non-medical marijuana with the gun also gave rise to the suspicion that Rivera was possessing the firearm illegally. **See Hicks**, 208 A.3d at 945.

The law in Pennsylvania generally prohibits any marijuana user from possessing a concealed firearm. The United States Code prohibits firearm possession by anyone "who is an unlawful user of or addicted to any controlled substance" as defined in federal law. 18 U.S.C. § 922(g)(3); **see United States v. Augustin**, 376 F.3d 135, 139 (3d Cir. 2004) (requiring a "temporal nexus" between unlawful drug use and firearm possession to sustain a Section 922(g)(3) conviction). Federal law classifies all marijuana as a Schedule I controlled substance with no lawful use, notwithstanding Pennsylvania's Medical Marijuana Act. 21 U.S.C. § 812(c)(c)(10); **see United States v. Cannon**, 36 F.4th 496, 500 (3d Cir. 2022) (*per curiam*). And anyone "who is prohibited from possessing a firearm under the statutes of the United States" cannot obtain a concealed carry license in Pennsylvania. 18 Pa.C.S.A.

§ 6109(e)(1)(xiv). Under this statutory structure, a Pennsylvanian who uses marijuana, even medical marijuana, is unable to obtain a license to carry a concealed firearm.

As a result, Officer Graczyk's observations of unpackaged marijuana and a firearm in the vehicle provided reasonable suspicion to detain Rivera and investigate whether he had a license to carry the firearm. Since this was a lawful detention, Rivera's arguments to the contrary fail. Therefore, the suppression court did not err in denying Rivera's motion to suppress the fruits of the lawful detention, *i.e.*, the gun, the marijuana, and Rivera's statements.[3]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/04/2024

---

[3] Rivera makes no separate argument on appeal whether his statements were properly obtained under ***Miranda v. Arizona***, 384 U.S. 436 (1966).