J-S08020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GUISEPPE BRUNO | : | |
| | : | |
| Appellant | : | No. 1427 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 2, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003195-2022

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED: APRIL 8, 2024**

Guiseppe Bruno (Appellant) appeals from the judgment of sentence[1] imposed after the trial court convicted him of one count each of persons not to possess firearms, possession of a firearm with altered manufacturer's number, possession of a controlled substance, possession of drug paraphernalia, possession of a small amount of marijuana, and general

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purports to appeal from the September 11, 2023, sentencing order. Notice of Appeal, 10/4/23, at 1. However, the trial court issued an amended sentencing order on October 2, 2023. Where a trial court amends a sentencing order during the period it maintains jurisdiction, the direct appeal lies from the amended sentencing order. ***See Commonwealth v. Garzone***, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010).

lighting requirements.[2]   Appellant challenges the denial of his suppression motion.   We affirm.

The trial court summarized the facts as follows:

On April 8, 2022, Officer [Nathan] Daniels was operating a marked patrol vehicle when he observed a black Hyundai Elantra ("Hyundai") traveling in the 3800 Block of Perkiomen Avenue, Berks County, Pennsylvania.  The vehicle's passenger side brake light was not functioning.  Officer Daniels initiated a traffic stop and approached the Hyundai on the passenger side.  [Appellant] was the vehicle's operator.  [A female occupied the front passenger seat.  Officer Daniels] asked [Appellant] for his driver's license, the vehicle's registration and insurance.

While outside of the Hyundai, Officer Daniels noticed a Blunt Effects spray and a cut straw by the left foot of the front seat passenger.  Officer Daniels was familiar with cut straws and knew that they were commonly used to ingest methamphetamine or some other narcotic.  He also knew that Blunt Effects spray can enhance marijuana and is commonly found with marijuana.

Officer Daniels saw a … rolling tray in the backseat of the vehicle.  Officer Daniels was familiar with these trays as they are commonly used to roll marijuana cigarette "blunts."

….

Officer Daniels returned to his patrol vehicle.  He ran [Appellant's] information and learned that he had previous arrests for robbery and persons not to possess a firearm.  Officer Daniels exited his patrol vehicle and asked [Appellant] to step out of the Hyundai.  He told [Appellant] he would like to search the vehicle and asked for consent. [Appellant] refused.  In response, Officer Daniels explained to [Appellant] that he would call a canine unit to the scene and apply for a search warrant if the canine alerted to the vehicle.  Officer Daniels asked [Appellant] for consent to search a second time and was again denied consent.

---

[2] *See* 18 Pa.C.S.A. §§ 6105(a)(1), 6110.2(a); 35 P.S. §§ 780-113(a)(16), (32), (31)(i); 75 Pa.C.S.A. § 4303(b).

....

> Officer Daniels requested that a canine come to the scene. Officer [Craig] Downs arrived on scene with his canine, Jax. ... Jax went around the outside of [Appellant's] vehicle. He alerted to the passenger side door. The windows on the vehicle were closed. Jax did not enter the vehicle at any time. After Jax alerted to the Hyundai, Officer Daniels informed [Appellant] that the vehicle would be impounded, and he would apply for a search warrant.
>
> A search warrant for the Hyundai was obtained on April 8, 2022. During the search of the vehicle, law enforcement discovered a firearm and other items of contraband.

Suppression Court Opinion, 3/1/23, at 1-3 (numbering and some paragraph breaks omitted).

On October 27, 2022, the Commonwealth filed a criminal information charging Appellant with the above offenses. On November 29, 2022, Appellant filed a suppression motion, challenging the canine search of his vehicle and alleging the search warrant obtained thereafter did not establish probable cause for the search of his vehicle. Motion to Suppress, 11/29/22, at 2-3. The trial court held a suppression hearing on January 12, 2023. On March 1, 2023, it denied the motion.

On September 11, 2023, following a bench trial, the trial court convicted Appellant of all charges, and sentenced him to an aggregate 7½ to 20 years in prison. On October 2, 2023, the trial court issued an amended sentencing order. Appellant timely appealed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

The sole issue Appellant raises on appeal is "[w]hether the trial court erred in denying [Appellant's] pretrial suppression motion[.]" Appellant's Brief at 5. Specifically, Appellant contends "the police [officer's] observation of suspected derivative contraband ... in the vehicle did not support prolonging Appellant's detention to conduct a [canine] search of the exterior of the vehicle." *Id.* at 10. Although Appellant concedes the initial traffic stop was lawful, he maintains "[p]olice did not have a reasonable suspicion that the driver, Appellant, possessed contraband or was engaged in the commission of crimes." *Id.* Appellant further argues, "while police might have had reasonable suspicion to detain the passenger, ... police did not have a sufficient basis to conduct a [canine] search of the car Appellant was driving." *Id.* at 12.

> Our standard of review of the denial of a suppression motion
>
> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. McMahon*, 280 A.3d 1069, 171 (Pa. Super. 2022) (quoting *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017)).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Rice*, 304 A.3d 1255, 1260 (Pa. Super. 2023) (citation omitted).

Our Courts have long recognized interactions between law enforcement and the public fall within three categories: mere encounters, investigative detentions, and custodial detentions. *Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019). Presently at issue is whether Officer Daniels was justified in extending the initial, lawful traffic stop into an investigative detention to conduct a canine search of Appellant's vehicle.[3] An investigative detention "constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot." *Id.* at 1199 (citations omitted). "To assess reasonable suspicion, we consider the totality of the circumstances known to the officer at the time of the investigative detention." *Commonwealth v. Rivera*, ___ A.3d ___, 2024 PA Super 36, 3 (Pa. Super. filed Mar. 4, 2024) (citation omitted).

> In determining whether police had reasonable suspicion to initiate an investigative detention, the fundamental inquiry is an objective one, namely, whether the facts available to police at the

---

[3] The trial court, the Commonwealth, and Appellant agree that 1) Officer Daniels seized Appellant following the initial traffic stop, and 2) that seizure required Officer Daniels to articulate a reasonable suspicion of criminal activity. *See* Suppression Court Opinion, 3/1/23, at 5; Commonwealth's Brief at 9; Appellant's Brief at 10.

- 5 -

moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate.

This Court has recognized reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

To demonstrate reasonable suspicion, the detaining officer must articulate something more than an inchoate and unparticularized suspicion or hunch. To determine whether reasonable suspicion exists, we examine the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen.

*Id.* (quoting ***Commonwealth v. Cunningham***, 287 A.3d 1, 8-9 (Pa. Super. 2022)).

We recently observed that "[a]n officer may prolong a traffic stop if, before completing the purpose of the stop, the officer develops additional suspicion. Further reasonable suspicion can support continued investigation, including a canine sniff of the exterior of the vehicle." ***Commonwealth v. Garcia***, ___A.3d ___, 2024 PA Super 33, 4 (Pa. Super. Filed Feb. 27, 2024) (citations omitted); ***see also Commonwealth v. Gould***, 187 A.3d 927, 939 n.12 (Pa. Super. 2018) ("Reasonable suspicion will support a warrantless canine sniff of the exterior of a vehicle." (citation omitted)). "[O]nce a canine sniff of a vehicle's exterior triggers a positive indication, reasonable suspicion of contraband in the vehicle ripens into probable cause." ***Commonwealth v. Hernandez***, 935 A.2d 1275, 1285 (Pa. 2007) (citation omitted).

In denying Appellant's suppression motion, the trial court found:

- 6 -

In this case, when Officer Daniels first approached the Hyundai, he noticed items inside of the vehicle that he recognized as drug paraphernalia. One of those items, a cut straw, was by the left foot of the front seat passenger. Officer Daniels recognized the cut straw as an instrument commonly used to ingest methamphetamine or other narcotics. The front seat passenger was also very alert and had marks on her face consistent [with] methamphetamine use. The additional items of paraphernalia, the Blunt Effects spray and … rolling tray, were known by Officer Daniels to be associated with marijuana use. Furthermore, in addition to observing items of drug paraphernalia in the Hyundai, Officer Daniels ran [Appellant's] criminal history and learned that he had prior arrests for robbery and persons not to possess a firearm.[4] Therefore, upon consideration of the totality of the circumstances, this [c]ourt [found] that the extension of the traffic stop was supported by reasonable suspicion of criminal activity.

Suppression Court Opinion, 3/1/23, at 6-7 (footnote added).

The trial court's findings are supported by the record. Officer Daniels had approximately five years of law enforcement experience, and attended multiple training sessions related to narcotics investigations. N.T., 1/12/23, at 6. Throughout his career, he encountered drug paraphernalia on numerous occasions. *Id.* Upon his initial contact with Appellant, Officer Daniels observed several items of drug paraphernalia in plain view. *Id.* at 9, 10, 12.

---

[4] While prior convictions do not alone give rise to reasonable suspicion, their presence along with other relevant factors may be considered in a reasonable suspicion analysis. *See Commonwealth v. Randolph*, 151 A.3d 170, 178 n.2 (Pa. Super. 2016) (concluding a prior drug trafficking conviction was relevant where law enforcement articulated "other suspicious details"). However, as Officer Daniels was conducting a "narcotics investigation," N.T., 1/12/23, at 18, Appellant's prior convictions for robbery and persons not to possess a firearm are of minimal relevance to our analysis.

Officer Daniels testified Appellant's passenger was "very aware," and had marks on her face consistent with methamphetamine use. *Id.* at 11.

Moreover, the trial court correctly applied the law to the specific facts of this case. Officer Daniels' observation of instruments commonly associated with illegal drug use, in addition to Appellant's passenger's indicia of narcotics use, provided reasonable suspicion justifying a canine search. *See Commonwealth v. Green*, 298 A.3d 1158, 1164 (Pa. Super. 2023) (reasonable suspicion established where officer observed, *inter alia*, "drug paraphernalia in plain view strewn about the vehicle"); *see also In Int. of A.A.*, 195 A.3d 896, 904 (Pa. 2018) (behavior of defendant's passenger factored into reasonable suspicion analysis), *overruled in part on other grounds* by *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021) ("[T]he smell of marijuana alone cannot create probable cause to justify a search under the state and federal constitutions."). Accordingly, Appellant's claim that Officer Daniels lacked reasonable suspicion to request a canine search lacks merit and his claim merits no relief.[5]

Judgment of sentence affirmed.

---

[5] Appellant does not challenge the legality of the search warrant issued after the canine search that resulted in the discovery of incriminating evidence.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/08/2024