J-A27045-25

2025 PA Super 273

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAMON BRANTLEY JR. :
:
Appellant : No. 3370 EDA 2024

Appeal from the Judgment of Sentence Entered November 22, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001076-2024

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

OPINION BY BECK, J.: **FILED DECEMBER 9, 2025**

Damon Brantley Jr. ("Brantley") appeals from the judgment of sentence entered by the Montgomery County Court of Common Pleas ("trial court") following his convictions of first-degree murder, robbery, criminal conspiracy, and firearm not to be carried without a license.[1]  Brantley challenges the denial of his motion to suppress evidence, arguing that the Commonwealth obtained a search warrant by omitting key information from the affidavit of probable cause.  Because the trial court did not err in denying the motion, we affirm.

The trial court aptly summarized the background of this case:

Brantley's convictions arose out of his role in the Norristown robbery and murder of William Carter on January 20, 2024. Brantley and his two co-defendants, Jerry Butler ("Butler") and Daquan Allen ("Allen"), conspired to rob the victim, and the victim was shot and killed in the course of that robbery.  Brantley was the shooter, identified by his clothing in video surveillance, ballistics evidence, and by witness Justin Davis ("Davis").  The

_____

[1]  18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 903, 6106(a)(1).

conspiracy was set in motion by Katherine Emel ("Emel")[, who saw] the victim with a wad of money earlier that day and told Allen that the victim owed her money. Brantley, Butler, Allen, and Davis drove to the victim's location, supplied by Emel, in a stolen Toyota Rav4. They parked behind the victim's Buick LaSabre, and when the victim went to his car, got out of their car and robbed him. Brantley shot the victim once in the head. They fled the scene, abandoning the Rav4 near the crime scene, and switched to a different car, an Infinity, to avoid detection. Later, Brantley went back to set fire to the Rav4. Brantley, Butler, and Allen fled to a residence in Endicott, New York, where they were apprehended on January 31, 2024.

Trial Court Opinion, 4/29/2025, at 12-13 (numbering supplied).

During its investigation, police obtained the license plate, make, and model of the RAV4 and connected it to Leilah Chang ("Chang"). The police interviewed Chang, who admitted that her boyfriend Brantley drove a RAV4 and once let her use it. Brantley had been staying overnight at Chang's apartment. Chang told police that she kicked Brantley out of her apartment following an argument on the night of the murder. She described the clothing he was wearing. She said she last saw him when she drove him to Philadelphia after he returned to her apartment, which was shortly after police believed the murder occurred. Using Chang's statements and a still shot of the shooter obtained from surveillance video of the crime scene, police obtained a search warrant. The search of Chang's apartment led to evidence incriminating Brantley, who was charged and tried along with his codefendants.

Prior to trial, the trial court conducted a joint hearing to address all pretrial motions of the Commonwealth, Brantley's codefendants, and Brantley. At the hearing, Brantley challenged the warrant to search Chang's apartment,

claiming that the Commonwealth obtained it by omitting key facts in the affidavit of probable cause, and argued that the trial court should suppress all evidence obtained during the search and any evidence derivative of that search as fruits of the poisonous tree.[2] The trial court took all motions under advisement, including Brantley's motion to suppress. It entered an order summarily denying the motion on July 11, 2024.[3]

Following a four-day trial in September 2024, the jury convicted Brantley of the above-stated crimes. On September 16, 2024, the trial court sentenced Brantley to an aggregate term of 50 to 100 years of incarceration—

_____

[2] No written motion was docketed or otherwise appears in the certified record, despite a reference by Brantley's counsel that he had filed a motion to suppress. *See* N.T., 6/18/2024, at 70. The Commonwealth responded to the motion on the merits without any objections to its specificity. *See id.* at 77-81.

[3] This procedure was incorrect. A trial court has a duty to explain its factual findings and conclusions of law on the record at the conclusion of the suppression hearing. *See* Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute[.]"). Although in this case the trial court's failure to abide by Rule 581 has not impeded our appellate review, as the trial court subsequently explained its rationale in its Pa.R.A.P. 1925(a) opinion, both our Supreme Court and this Court have strongly disapproved of a trial court's failure to abide by Rule 581's "unambiguous mandate." *See In re L.J.*, 79 A.3d 1073, 1086 (Pa. 2013) ("[D]efendants simply should not be forced to guess, or to learn for the first time in a post-sentence opinion, what evidence supported the trial court's suppression ruling."); *Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) ("We note that the filing of a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing in accordance with Pa.R.Crim.P. 581(I).").

50 to 100 years for first-degree murder,[4] a concurrent term of 6 to 20 years for robbery followed by a consecutive term of 6 to 20 years for conspiracy to commit robbery, and 1 to 5 years for the firearms conviction.

Brantley timely appealed. From the start, Brantley's compliance with our rules of appellate procedure has been rocky. Brantley, still represented by trial counsel, failed to file a docketing statement in accordance with Pa.R.A.P. 3517 until this Court twice directed him to do so to avoid dismissal of his appeal. Order, 1/30/2025, at 1; Order, 5/19/2025, at 1. The trial court ordered Brantley to file a concise statement of errors complained of on appeal. Trial Court Order, 12/12/2024, at 1. Brantley failed to do so, prompting the trial court to issue an opinion requesting that this Court deem all issues waived. Trial Court Opinion, 1/27/2025, at 1-2 (numbering supplied). Upon petition from Brantley, this Court remanded this case with directions for Brantley to file a concise statement nunc pro tunc and for the trial court to issue an opinion pursuant to Pa.R.A.P. 1925(a). Order, 3/17/2025, at 1. Both complied. After this Court resumed jurisdiction, Brantley failed to file an

---

[4] Brantley was a juvenile when he committed the crimes in question; therefore, the mandatory sentence of life in prison without the possibility of parole does not apply. *See Miller v. Alabama*, 567 U.S. 460 (2012); *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013); *see also* 18 Pa.C.S. § 1102(a)(1) (requiring sentence of death or life imprisonment for murder in first degree except if offender is under the age of eighteen); *id.* § 1102.1(a)(1) (requiring mandatory minimum sentence of life imprisonment without parole or a term of imprisonment of thirty-five years to life for offender who committed murder in the first degree when he was under eighteen years old and at least fifteen years old).

appellate brief, resulting in our dismissal of the case and direction to the trial court to withhold counsel fees. Order, 7/17/2025, at 1. Upon Brantley's request for reinstatement, we vacated our July 17, 2025 Order and directed him to file a brief. Order, 7/23/2025, at 1.

With all briefing complete, this case should finally be ready for our review. Before we proceed with the merits, however, we once again must consider Brantley's failure to comply with our rules of appellate procedure, this time concerning briefing requirements.

Brantley purports to raise two issues on appeal. The second is whether he "is permitted to join in the matters previously appealed" by his codefendants at trial. Brantley's Brief at 10. In his concise statement, Brantley attempted to preserve this overbroad and vaguely worded issue by simply declaring that he "joins in the matters appealed" by his codefendants. Brantley's Concise Statement, 3/26/2025, ¶ 2. This catchall attempt fails, as it does not "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge" as Rule 1925 requires. Pa.R.A.P. 1925(b)(4)(ii). Further, Brantley's attempt to "incorporate by reference" the issues raised by his codefendants in the briefs filed in their separate appeals "is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief[.]" **Commonwealth v. Briggs**, 12 A.3d 291, 342 (Pa. 2011). Brantley offers no argument in support of this issue in his brief—a clear violation Rule 2119, which requires

an appellant to include a developed argument in his brief. *See* Pa.R.A.P. 2119. Accordingly, he has waived this issue both for his failure to raise it in accordance with Rule 1925(b)(4) and for his failure to present any argument to this Court. *See* Pa.R.A.P. 1925(b)(4)(iv) (issues not raised in accordance with subsection (b)(4) are waived); *see also Commonwealth v. Woodard*, 129 A.3d 480, 509 (Pa. 2015) (concluding that appellant's failure "to present any argument in support" of an issue results in waiver).

The remaining issue challenges the trial court's denial of his motion to suppress. Brantley's Brief at 10. While Brantley generally discusses this issue in terms of the correct legal standard, his argument lacks citation to the legal authorities upon which he is relying. *See* Brantley's Brief at 13-17; *see also* Pa.R.A.P. 2119(a), (b) (requiring discussion of and citation to authorities). Although Brantley notes in general that he preserved his argument at the June 18, 2024 hearing, *see* Brantley's Brief at 12, his statement of the case and argument fail to cite the accompanying place in the record where the matter referred appears, nor does he include a specific reference to the place where he preserved the issue. *See* Pa.R.A.P. 2117(c), 2119(c), (e).

Ordinarily, these deficiencies are the type that substantially impede our appellate review, warranting a finding of waiver. In this case, however, this suppression issue is discrete. Both the trial court and the Commonwealth readily comprehended the legal issue, the relevant authority, and the place in

the record where Brantley preserved the argument.[5]  We do as well, and thus decline to find his issue waived on this basis.[6]

Prior to proceeding to a merits review, we must address one final procedural issue: the Commonwealth claims that Brantley failed to include the search warrant upon which his claim is based in the certified record and argues that because Brantley "bore the duty to ensure the necessary materials were

---

[5]  Instead of the deficiencies we identify, the Commonwealth focuses upon Brantley's failure to include the trial court's answers to its questions presented pursuant to Pa.R.A.P. 2116(a).  Based upon this failure, as well as his failure to present an argument concerning the second issue and to ensure certain documents are in the certified record, the Commonwealth requests that we quash the appeal pursuant to Rule 2101.  Commonwealth's Brief at 10-12; *see also* Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").  We decline to dismiss the appeal for the reasons discussed herein.

[6]  While we dispose of Brantley's appeal on the merits, we remind counsel that

> [t]he briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.  Thus, we reiterate that compliance with these rules by appellate advocates who have any business before our Court is mandatory.

*Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011).

included" for this Court's review, Brantley waived his suppression claim. Commonwealth's Brief at 11.

"The fundamental tool for appellate review is the official record of what happened at trial." *Commonwealth v. Williams*, 715 A.2d 1101, 1103 (Pa. 1998). Ultimately, the responsibility rests upon the appellant to ensure that the certified record is complete, which means that this Court has all the materials necessary to perform its review. *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (en banc). Our law is clear: if a document does not appear in the certified record, we cannot consider it in our review, and a party cannot remedy this deficiency merely by including copies of the missing documents in a brief or in the reproduced record. *Id.* at 6. Equally clear is that the certified record only includes such evidence originally filed in the trial court. *See* Pa.R.A.P. 1921 ("The original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.").

Brantley states that he has attached a transcript of Chang's interview to his brief, *see* Brantley's Brief at 14, but that document is absent. Although Brantley fails to cite to the reproduced record in his brief, *see* Pa.R.A.P. 2132, Brantley included documents purporting to be the search warrant, affidavit of probable cause, and a transcript of Chang's police interview. *See* R.R. 2a.-

99a. Because these documents do not appear in the certified record, we cannot consider them on appeal. *See Preston*, 904 A.2d at 6.

However, while the Commonwealth argues that Brantley simply failed in his responsibility to ensure that such documents was included in the certified record, nothing in the certified record indicates that the Commonwealth entered the search warrant and affidavit of probable cause into the evidentiary record in the first instance. Once a defendant challenges evidence through a motion to suppress, the Commonwealth bears the burden of demonstrating that the search was constitutional. *See* Pa.R.Crim.P. 581(H); *Commonwealth v. James*, 69 A.3d 180, 189 (Pa. 2013); *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012); *see also Commonwealth v. Easter*, 331 A.3d 675, 682 (Pa. Super. 2025) ("[A]t a suppression hearing, the Commonwealth must present documentary evidence or the testimony of a witness with first-hand knowledge of the requisite supporting police action depriving a person of his liberty or seeking the admission of evidence against him."). Although the Commonwealth entered other warrants into the record in response to motions to suppress filed by Brantley's codefendants, none were the warrant to search Chang's apartment. Regarding Brantley's motion, the prosecutor merely stated that she had "handed up the exhibits" to the trial court before proceeding into her argument. N.T., 6/18/2024, at 77. In contrast to its treatment of the codefendants' motions to suppress, the

Commonwealth did not identify or enter any exhibits into evidence during this portion of the hearing. *Id.* at 77-81.

In his brief, Brantley asserts that he and the Commonwealth agreed prior to the hearing that he "could read into the record" statements made by Chang in her police interview that the defense argued were exculpatory and should have been included in the warrant. Brantley's Brief at 14. Both the prosecutor and defense counsel allude to a stipulation or agreement between them, but neither clearly explained its parameters. In response to the trial court's query regarding agreements between the parties, the prosecutor responded: "in regard[] to argument by omission to Chang at the apartment search, there will be – the admissibility of Chang's statement along with that warrant will be the basis for that argument." N.T., 6/18/2024, at 6 (titles omitted). At the outset of his argument, trial counsel generally referenced Chang's police interview and vaguely indicated his belief that the parties "entered into stipulations" in lieu of "having a *Franks* hearing." *Id.* at 70.[7] He proceeded to identify the statements in the interview that Brantley contended should have been included and described the impact on the affiant's assertions in the affidavit by failing to include these statements. *Id.* at 70-77. The prosecutor responded in kind, arguing that any omission in the affidavit was de minimus. *Id.* at 77-81.

---

[7] Counsel was referencing *Franks v. Delaware*, 438 U.S. 154 (1978).

Brantley's argument at the suppression hearing and on appeal are confined to the impact of the omissions; he does not otherwise challenge the Commonwealth's failure to meet its burden of proof. Considering the parties' lack of disagreement concerning the facts and the discrete nature of Brantley's particular argument, we have sufficient information in the certified record before us to evaluate whether the trial court erred in its assessment of the omissions. As such, we decline to find Brantley's issue waived on this basis as well and proceed to the merits of the claim raised and preserved for our review.

As he did at the suppression hearing, Brantley argues that police intentionally omitted exculpatory information from Chang's police interview from the affidavit of probable cause. Brantley's Brief at 14. Had the affidavit included such information, Brantley maintains it would have negated the apparent probable cause supporting the search warrant for Chang's apartment. *Id.* at 14-15.

Brantley focuses upon the following omissions and misrepresentations: (1) Chang's assertion to police that Brantley's outfit on the night of the murder lacked "any kind of insignia or design"; (2) Chang's denial that the still photograph of the shooter resembled Brantley; (3) Chang's denial that she ever saw Brantley with a gun; and (4) Chang's estimation of the time she says

she drove Brantley to Philadelphia as being as early as 8:00 p.m.[8] *Id.* at 15-17 (citing pages 21, 29, 40, 42 of Chang's interview). He contends that these omissions impacted the probable cause determination in the following ways. First, the affidavit's mention of Chang's description of the clothes as black in color without mentioning her denial of an insignia or design was "important" because the affidavit included a photograph of the shooter in action, which depicted the shooter's clothing as black in color with "a very large white insignia and design" on his pants. *Id.* at 15-16. Second, the officer who authored the affidavit indicated that the photograph of the shooter resembled Brantley in size and stature without mentioning that Brantley's girlfriend disagreed. *Id.* Third, Brantley contends that including Chang's denial that she ever saw Brantley with a gun was pertinent simply because the search warrant sought to recover a gun. *Id.* Finally, he argues that if the officers included Chang's actual estimation of when she said she drove Brantley to Philadelphia (8:00 or 8:15), the signing judge would have known that it would have been impossible for Brantley to have shot Carter at 7:53 p.m. and then return to Chang's apartment by 8:00 p.m. *Id.* at 16-17.

_____

[8] Brantley's brief mentions a fifth omission concerning information about Brantley's whereabouts after Chang says she kicked Brantley out of the apartment. *Id.* at 15-17. Because the certified record indicates that he did not present this argument to the trial court in the first instance, we do not consider it on appeal. *See* Pa.R.A.P. 302(a) (requiring preservation of claims raised on appeal before the trial court).

When reviewing the denial of a suppression motion, we bear in mind that "the trial court's findings of fact are binding upon us to the extent they have record support," but we review its legal conclusions de novo. ***Commonwealth v. Adams***, 205 A.3d 1195, 1199 (Pa. 2019). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." ***Commonwealth v. Rivera***, 311 A.3d 1160, 1164 (Pa. Super. 2024) (citation omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of our Pennsylvania Constitution prohibit unreasonable searches and seizures." ***Commonwealth v. Chandler***, 477 A.2d 851, 855 (Pa. 1984). "They provide that no warrant shall issue except upon probable cause supported by oath or affirmation, and that the warrant must describe the place to be searched and the person or things to be seized." ***Id.*** To obtain a search warrant, the Commonwealth must demonstrate to the magistrate in one or more affidavits that it has probable cause to search in the requested location. Pa.R.Crim.P. 203(B). Using the "totality of the circumstances" test set forth in ***Illinois v. Gates***, 462 U.S. 213 (1983), the magistrate must make

a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Katona*, 191 A.3d 8, 13 (Pa. Super. 2018) (en banc), *aff'd*, 240 A.3d 463 (Pa. 2020).

A defendant may challenge "omissions or ambiguities in the affidavit of probable cause" by filing a motion to suppress evidence obtained during a search from the issued warrant. *James*, 69 A.3d at 189. When a defendant files a motion to suppress evidence, the Commonwealth has the "burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Wallace*, 42 A.3d at 1047-48; *see also* Pa.R.Crim.P. 581(H) ("The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights").

To evaluate a defendant's claim that the police omitted material facts from an affidavit of probable cause, this Court has adopted the test used by the United States Court of Appeals for the Third Circuit in *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993). *Commonwealth v. Taylor*, 850 A.2d 684, 689 (Pa. Super. 2004). When a defendant alleges that material facts were omitted from an affidavit of probable cause, we consider:

> (1) whether the officer withheld a highly relevant fact within his knowledge, where any reasonable person would have known that this was the kind of thing the judge would wish to know; and (2)

> whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information.

*Id.* (quotation marks and citations omitted). This claim typically arises when the "omission of facts tended to mislead the magistrate as to the veracity of the facts included," such that "inclusion of the omitted material facts would have undermined the other facts in the affidavit that gave rise to probable cause." *Commonwealth v. Gould*, 187 A.3d 927, 940 (Pa. Super. 2018).[9]

The first alleged omission concerns Chang's description of Brantley's outfit on the night of the murder. As argued by Brantley, the affiant swore that Chang told the police that Brantley "was wearing all dark clothing," which matched a still shot obtained from surveillance video at the crime scene and attached to the affidavit. N.T., 6/18/2024, at 72-75. Brantley conceded that Chang told the officers that he was "wearing all black" and that the attached photograph depicted an individual wearing black clothing. *Id.* at 73-74. Counsel emphasized, however, that officers asked her in follow up whether Brantley had "any kind of designs on any of his clothing," to which Chang responded, "no." *Id.* at 74. He argued that the attached photograph showed a "white, unique insignia" at the bottom of the black sweatpants, yet the

---

[9] This contrasts with a police officer's knowing, intentional, or reckless inclusion of a falsehood. *See Taylor*, 850 A.2d at 688, 689 n.3 (distinguishing between false statements and omissions); *see also Franks*, 438 U.S. at 171 (describing the showing a defendant must make when challenging a false statement in an affidavit of probable cause to obtain a hearing testing the veracity of the affiant's statements).

affiant omitted Chang's specific denial that an insignia appeared on Brantley's clothes. *Id.* at 73, 77.

Based upon the recounting of the interview provided by Brantley's counsel, it does not support his claim that Chang denied that "an insignia" appeared on his clothes; rather, as stated above, police merely asked if Brantley had any designs on his clothes. *Id.* at 74. We find this to be significant, as a layperson describing an outfit reasonably may describe it as "all black" without designs, notwithstanding an insignia on the bottom of a pantleg when the outfit was entirely otherwise black in color. When assessing the totality of the circumstances, the magistrate had before it both the photograph showing the insignia and Chang's statement that Brantley was wearing all black. That Chang denied there were "designs" on his outfit was neither "material" nor "highly relevant," such that any reasonable person would have known the magistrate would have wished to know that fact when evaluating probable cause. *See Taylor*, 850 A.2d at 689. Nor would including that information in the affidavit have disrupted the conclusion that the Commonwealth had probable cause to believe that Brantley was connected to the crime and that it would find pertinent evidence at the apartment where he was staying. *See id.*

Likewise, Chang's denial that the individual in the photograph looked like Brantley or that she ever saw him with a gun was not relevant nor material under the circumstances described here. As the trial court aptly observed, it

is logical that Chang, as Brantley's girlfriend, "would not be completely forthcoming to the detectives." Trial Court Opinion, 4/29/2025, at 13. Including these identified denials would not alter the probability that Brantley was involved in the crime and that evidence of his involvement would be found at Chang's apartment.

Finally, given that probable cause deals in fair probabilities instead of the trial standard of beyond a reasonable doubt, *see Katona*, 191 A.3d at 13, recounting Chang's time estimation as approximately 8:15 instead of 8:00 or 8:15 is not something a magistrate would want to know; it does not materially impact the general timeline and its inclusion would not have altered the totality of the circumstances that supported a finding of probable cause.

In conclusion, the alleged omissions were neither "highly relevant" nor material pursuant to *Taylor*. None of the omitted facts would have altered the magistrate's finding of probable cause based on the information contained in the affidavit of probable cause. Because the trial court did not err in denying the motion to suppress, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/9/2025