J-S37036-23

2024 PA Super 70

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
THOMAS W. NESTOR :
:
Appellant : No. 460 EDA 2023

Appeal from the Judgment of Sentence Entered February 13, 2023
In the Court of Common Pleas of Chester County
Criminal Division at CP-15-CR-0002107-2022

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

OPINION BY MURRAY, J.: **FILED APRIL 10, 2024**

Thomas W. Nestor (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of driving under the influence of a controlled substance (DUI), driving on roadways laned for traffic, and careless driving.[1] We affirm.

The trial court recounted the following factual history:

On August 15, 2021, Trooper [Nathan] Zimmerman was working the 2 p.m. to 10 p.m. shift. At approximately 10:00 p.m., he and another trooper[, Trooper Nicholas Hornbaker,] had just finished a call in the southern end of Chester County and were driving their [respective] patrol vehicles back to the barracks on State Route 896 northbound because it was the end of their shift. While en[ ]route, Trooper Zimmerman noticed a yellow work truck in front of him failing to maintain its lane of travel. Route 896 is a two[-]lane road, and [the truck] was swerving both to the left and the right[,] crossing the center line on the left and the white fog line on the right. Trooper Zimmerman's observations caused concern, so he activated his [Motor Vehicle Recording system

---

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 3309(1), 3714(a).

(MVR)]. He continued to observe similar behavior after the MVR was activated. When the MVR is activated, it tracks [] and records a number of seconds [of footage taken prior to the activation]. The sound starts on the recording[] at the time that the MVR button is pressed. The video recorded approximately four to five minutes of [Appellant] driving before Trooper Zimmerman initiated the stop.

After the MVR was activated, Trooper Zimmerman noted four times that the truck crossed the center line and nine times that it crossed the white fog line. During one of the times that the vehicle crossed the fog line, the entire vehicle crossed the line and was completely outside of the lane of travel. The road in that area was curvy, with hills and oncoming traffic. These factors played a role in [Trooper Zimmerman's] decision to stop the vehicle. He had observed the vehicle for approximately two miles before he made the decision to activate the MVR.

Trial Court Opinion, 4/24/23, at 4-5 (citations to record omitted).

Trooper Zimmerman continued driving behind Appellant's vehicle until he identified a safe place to conduct a traffic stop. After Trooper Zimmerman activated his emergency lights, Appellant pulled into a gas station parking lot. Trooper Hornbaker also stopped in the parking lot to assist with the stop.

Once the truck stopped, Trooper Zimmerman called out the traffic stop on his radio so that dispatchers would know what they were doing. He could see the truck operator making erratic movements inside the cab and could tell that he was on his cellphone. Trooper Zimmerman could see the driver in the truck's left mirror, and based on his facial expressions and the way he was moving, the driver appeared very agitated.

Trooper Zimmerman walked up to the driver's side of the truck, identified himself as a state trooper, and asked [Appellant] … to step out of the vehicle. He did this based on [Appellant's] level of agitation and his impression that [Appellant] did not plan to stop the truck when the trooper wanted him to do so. When [Appellant] got out of the truck, he appeared very agitated and upset. Trooper Zimmerman asked [Appellant] to hang up his phone call and walk toward the front of his patrol vehicle. These

- 2 -

are the instructions given anytime [police] ask a person to exit a vehicle.

After he exited the vehicle, [Appellant] still seemed agitated. As the trooper tried to briefly explain the reason for the stop, [Appellant] immediately started making excuses as to why he did nothing wrong. [Appellant] was very excitable and used "a lot" of hand gestures. [Appellant] was extremely talkative and acted in [a] way the trooper would not expect someone to act after they were pulled over. [At trial,] Trooper Zimmerman was asked [by the Commonwealth], "[D]id you talk to [Appellant] specifically about the reason for the stop, which was the vehicles [sic] leaving the lanes of travel?" He responded as follows:

Yes. I had [Appellant] come back to the front of my car. I … tried to, first off, explain why I had stopped him and then tr[ied to] ask him some questions about why that might have been happening. [Appellant] made a lot of different statements about the fact that he had been working a long day. He kept telling me different people that I could call to verify that he had been working at a certain place and how long he had been working. I was under the impression that there was something a little bit more going on based on [Appellant's] actions. I tried to ask him a little bit about any alcohol or drug use. He denied alcohol use and drug use, but he would become [] more agitated and more upset anytime I tried to question him about any wrongdoing.

*Id.* at 6-8 (citations to record and footnote omitted).[2]

Trooper Zimmerman also observed that Appellant's eyes were dilated:

[Appellant] was under the bright lights of the gas station parking lot, and pupils normally constrict in bright lights. [Appellant's] pupils were not constricted[,] but instead were enlarged as if he was in the dark. [Appellant's] pupils also did not constrict when the trooper shined his flashlight into [Appellant's] eyes.

---

[2] During his non-jury trial, Appellant testified that he was not under the influence of any drugs on the date of the stop. N.T., 11/2/22, at 90-91. Appellant also testified about his work schedule that day, *id.* at 91, 93-96; the difficulties he had steering the truck he had borrowed from a friend, *id.* at 92, 101-02; and an injury in his left leg, *id.* at 100-01.

*Id.* at 8.

Trooper Zimmerman asked Appellant to submit to standard field sobriety tests "based on [Appellant's] actions, mood swings, agitation, excessive or extreme talkativeness, and numerous complaints of dry mouth." *Id.* at 9 (citation to record omitted). Appellant initially refused, but eventually agreed. *Id.* at 10.

> The standard field sobriety tests that Trooper Zimerman had [Appellant] complete were the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test. … Trooper Zimmerman testified that the tests were not evaluated on a pass-fail system, but were used to identify indicators of impairment. During the instructional phase, the trooper always looks to see if the person being tested starts too early or is unable to maintain the instructional position.
>
> Prior to starting the walk and turn test, Trooper Zimmerman asked [Appellant] if he had physical problems or health issues that would interfere with the performance of the tests. He explained to [Appellant] that he would be doing a walking test. [Appellant] stated that he had issues with the meniscus in his left knee and stated that it only hurts when he sits down. Trooper Zimmerman proceeded with the test.
>
> During the instructions for the walk and turn test, [Appellant] was unable to maintain his instructional position as the trooper explained and demonstrated the test to him. During the walking phase, there are six indicators that [Trooper Zimmerman] looks for: missing heel to toe steps, stepping off the line, raising arms for balance, conducting an improper turn, and stopping. In this case, as he began the test, [Appellant] immediately raised his arms for balance. [Appellant] stumbled and staggered while trying to get started a couple of times, and[, according to Trooper Zimmerman,] those actions were indicators of starting and stopping the test.
>
> [Appellant] also stepped off the line and raised his arms for balance. Once [Appellant] finally got his footing[,] he took the incorrect number of steps on the first set of steps. He did an

- 4 -

improper turn, stopped again, and had difficulty resetting his feet. [Appellant] stumbled forward a step or so and stepped back a couple of times before starting the second set of nine steps. [Appellant] raised his arms for balance and stepped off the line on the return steps. Once [Appellant] started having some issues during the test, he started talking about the pain in his knee.

*Id.* at 10-11 (citations to record omitted).

During the one-leg stand test, Appellant was able to stand on one leg without swaying. *Id.* at 12. Appellant was unable to keep his arms flat against his sides. *Id.*

Next, Trooper Zimmerman administered Advance Roadside Impaired Driving Enforcement (ARIDE) tests, in which Trooper Zimmerman had received specialized training.

The first ARIDE test administered to [Appellant] was the lack of convergence test. Trooper Zimmerman testified that the subject is supposed to stand still and move only his eyes [as the trooper] moves a pen around [the subject's] face and brings it close to his nose. [Trooper Zimmerman] looks to see if the subject's pupils converge as the pen comes close to his nose. The trooper did not note a lack of convergence on [Appellant], so there were no indicators of impairment on that test.

The next test that was administered was the Modified Romberg Balance Test, where the subject tilts his head back, closes his eyes, and estimates the passage of thirty seconds. [Trooper Zimmerman] timed the test using a stopwatch. The indicators include the internal clock estimation, tremors in the eyelids or extremities, and swaying of the body. When [Appellant] completed this test, he estimated the passage of thirty seconds in approximately 35 seconds. Trooper Zimmerman testified that pursuant to the ARIDE manual, five seconds over is not necessarily an indicator of any kind of impairment. The trooper did not note any swaying in [Appellant], but his eyelids had severe tremors and his arms and hands were twitching.

*Id.* at 12-13 (citations to record omitted).

Trooper Zimmerman arrested Appellant for suspected DUI – controlled substance, based on his observations of Appellant during the standard field sobriety and ARIDE tests, as well as Appellant's behavior during the stop. Appellant refused to submit to chemical testing.

In July 2022, the Commonwealth charged Appellant, via criminal information, with the aforementioned offenses.[3] After a non-jury trial, the trial court convicted Appellant of all offenses. On February 13, 2023, the trial court sentenced Appellant to 72 hours to 6 months in prison. The court also ordered Appellant to pay fines and costs, complete Alcohol Highway Safety School, undergo a CRN evaluation, and submit to a drug and alcohol evaluation and complete recommended treatment.

Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

1. Did the trial [c]ourt err in admitting and relying on opinion evidence from a lay witness regarding the influence of a drug without an adequate basis in training and experience, and without an adequate factual basis?

2. Was the trial evidence insufficient to establish beyond a reasonable doubt that [A]ppellant operated a vehicle while under the influence of a drug?

3. Was the trial evidence insufficient to establish beyond a reasonable doubt that [Appellant] operated a vehicle while impaired by a drug?

---

[3] The criminal information indicated a penalty enhancement for Appellant's refusal of testing. Information, 7/29/22.

Appellant's Brief at 2.

In his first issue, Appellant argues the trial court erred by allowing Trooper Zimmerman to testify as to his belief, based on his training and experience, that Appellant was impaired by a controlled substance. *Id.* at 10. Appellant contends Trooper Zimmerman was not a qualified expert and could not "offer either his 'impression' or his opinion that [Appellant's] twitches established his use of a stimulant, as opposed to some other cause." *Id.* at 11.[4]

> We address this issue mindful of our standard of review:
>
> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted).

---

[4] Appellant does not cite the Pennsylvania Rules of Evidence pertaining to opinion testimony by lay and expert witnesses. *See* Pa.R.A.P. 2119(a) (providing the argument shall include "such discussion and citation of authorities as are deemed pertinent.").

Pennsylvania Rule of Evidence 701 governs the admission of opinion testimony by lay witnesses:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. "Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." *Commonwealth v. Berry*, 172 A.3d 1, 3-4 (Pa. Super. 2017). "[L]ay testimony is intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand." *Commonwealth v. Rose*, 172 A.3d 1121, 1131 (Pa. Super. 2017) (citing *United States v. Kilpatrick*, 798 F.3d 365, 379 (6th Cir. 2015)).[5]

---

[5] Because Pa.R.E. 701 is identical to Federal Rule of Evidence 701, *see* Pa.R.E. 701, Comment, Pennsylvania courts have used federal court decisions interpreting F.R.E. 701 as a guide in interpreting Pa.R.E. 701. *See Rose*, 172 A.3d at 1130. Although this Court is not bound by decisions of intermediate federal appellate courts, we may look to them for guidance. *Id.* (citing *Commonwealth v. Ragan*, 742 A.2d 390, 396 (Pa. 1999)).

As the Third Circuit has stated, "the reliability of lay opinion testimony should be assessed in light of the witness's relevant specialized knowledge and experience." *United States v. Savage*, 970 F.3d 217, 286 (3d Cir. 2020). Further, in distinguishing between specialized lay witness testimony under F.R.E. 701 and expert testimony under F.R.E. 702, the *Savage* Court noted:

> [w]hen a lay witness has particularized knowledge by virtue of her experience, she may testify—*even if* the subject matter is specialized or technical—because the testimony is based on the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702. Thus, as long as the technical components of the testimony are based on the lay witness's personal knowledge, such testimony is usually permissible under Rule 701.

*Id.* (quoting *United States v. Fulton*, 837 F.3d 281, 301 (3d Cir. 2016)) (emphasis added; footnote, paragraph break and quotation marks omitted).

Pennsylvania courts have generally agreed with federal courts that a witness with the requisite observations and experience may offer a lay opinion to establish DUI – controlled substance impairment under section 3802(d)(2). In *Commonwealth v. Griffith*, 32 A.3d 1231 (Pa. 2011), the Pennsylvania Supreme Court rejected a blanket rule that the Commonwealth introduce expert testimony to establish drug impairment. The Court held instead, "[t]he need for expert testimony in a []section 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account … the nature and overall strength of the Commonwealth's evidence…." *Id.* at 1239. The

*Griffith* Court rejected the need for expert testimony because, under the circumstances of that case, other evidence of impairment was present. *See id.* at 1240. In particular, a citizen witnessed Griffith's hazardous driving; a veteran police officer observed that Griffith had "difficultly standing, [was] off balance, and she was constantly having to catch herself on her vehicle"; her hands were shaking; and she was unable to perform field sobriety tests. *Id.* at 1233, 1240 (some punctuation omitted). Thus, under circumstances where "[a]n experienced police officer closely observed [Griffith's] behavior, demeanor, unsteadiness, and inability to perform field sobriety tests," and Griffith "admitted taking one prescription medication in the morning[,]" the Court affirmed a section 3802(d)(2) conviction in the absence of expert testimony. *Id.* at 1240.

This Court has also held section 3802(d)(2) does not require expert testimony where the totality of the circumstances, including an experienced officer's observations, prove the driver was under the influence of a controlled substance. *See Commonwealth v. Spence*, 290 A.3d 301, 309-10 (Pa. Super. 2023) (concluding evidence was sufficient to sustain a section 3802(d)(2) conviction without expert testimony, where the appellant led a trooper on a high-speed chase; the trooper smelled marijuana emanating from the appellant's vehicle; the appellant admitted to smoking marijuana prior to driving; and the appellant performed inadequately on field sobriety tests); *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 (Pa. Super. 2010)

(concluding evidence was sufficient to sustain a section 3802(d)(2) conviction without expert testimony, where an eyewitness saw the appellant drive onto a sidewalk and hit a handicapped sign; a veteran officer observed the appellant's lethargic behavior, slurred speech, and particularly grey skin; and appellant slowly jogged away from the responding officer before tripping into a stairwell).

To support his claim that Trooper Zimmerman gave improper expert testimony, Appellant relies on **Commonwealth v. Gause**, 164 A.3d 535 (Pa. Super. 2017) (*en banc*). In **Gause**, a police officer stopped the appellant's vehicle after observing that the vehicle lacked illuminated taillights. **Id.** at 535. Although the appellant admitted he had consumed one beer, **he did not fumble while providing his license and registration; his speech was not slurred**; and he had no difficulty with balance and coordination (notwithstanding portions of the field sobriety tests that the appellant completed with varying levels of success). **Id.** The officer also administered the Romberg test, which she administers for suspected marijuana use. **Id.** During the test, she observed the appellant's eyelids tremoring. **Id.** The officer did not testify that she smelled marijuana or otherwise observed evidence of recent marijuana use. **See id.** at 539.

At trial, the officer in **Gause** opined that based on the eyelid tremors, the appellant was under the influence of marijuana. **Id.** at 536. This Court, sitting *en banc*, held that the officer's testimony was inadmissible. **Id.** at 539;

*see also id.* ("[I]t is eminently clear that attributing body or eyelid tremors to marijuana use requires specialized knowledge within the scope of Pa.R.E. 702."). Significantly, there was **no additional evidence pointing to marijuana use by the appellant**, *i.e.*, an admission by the appellant, the odor of marijuana emanating from the car or his person, or physical evidence suggesting recent marijuana use. *Id.* at 538-39. Therefore, although the officer "could testify as to her observations of an apparent physical condition[,] a qualified expert [wa]s required to provide the connection between the symptoms observed and the drug allegedly influencing the [appellant's] driving." *Id.* at 539.

Thus, Pennsylvania Courts, including *Gause*, recognize the need for expert testimony must be evaluated on "a case-by-case basis, taking into account not just the specific drug at issue … but also the nature and overall strength of the Commonwealth's evidence." *Id.* at 538 (quoting *Griffith*, 32 A.3d at 1239). In fact, the *Gause* Court reiterated the Supreme Court's holding in *Griffith*: "[E]xpert testimony is not necessary to establish impairment under []section 3802(d)(2) where there exists other independent evidence of impairment." *Id.* (quoting *Griffith*, 32 A.2d at 1239). Thus, our decision in *Gause* did not alter the general principle that the need for expert testimony in a section 3802(d)(2) case requires a case-by-case factual analysis.

Based on our review of the certified record and trial court opinion in this matter, we find **Gause** distinguishable due to the presence of "other independent evidence of [Appellant's] impairment." **See Gause**, 164 A.3d at 538. The totality of Trooper Zimmerman's observations, taking into account his relevant training and experience, permitted the admission of his lay opinion under Pa.R.E. 701.

Trooper Zimmerman relied on several personal observations, upon which the trial court subsequently credited, in opining Appellant was under the influence of a "drug or combination of drugs" that rendered him incapable of safe driving. **See** Trial Court Opinion, 4/24/23, at 13-14, 27, 30, 34-35.[6] Trooper Zimmerman personally observed Appellant's driving for approximately two minutes **before** he activated his MVR. N.T., 11/2/22, at 14-15. "The [MVR] recorded approximately four to five minutes of [Appellant's] driving before Trooper Zimmerman initiated the stop." Trial Court Opinion, 4/24/23, at 5. While driving behind Appellant, Trooper Zimmerman observed Appellant's vehicle swerving and crossing both the center and fog lines multiple times. N.T., 11/2/22, at 14-15. Trooper

---

[6] We emphasize that the trial court made clear credibility determinations, which we will not usurp on appeal. **See Commonwealth v. Perrin**, 291 A.3d 337, 346 (Pa. 2023) (explaining a factfinder has the "sole authority to make determinations as to witness credibility."). The trial court found Trooper Zimmerman's testimony "extremely credible." Trial Court Opinion, 4/24/23, at 27. By contrast, the court found Appellant's "testimony that his difficulty driving … was due to his unfamiliarity with the truck" was "simply not credible." **Id.** at 28; **see also id.** at 29 (stating Appellant "lacks credibility").

Zimmerman's testimony and the MVR confirm Appellant displayed "very major issues with safety and maintaining that lane of travel." *Id.* at 16; Trial Court Opinion, 4/24/23, at 5. Further, having reviewed the MVR, the trial court determined Appellant's driving "was actually extremely hazardous." Trial Court Opinion, 4/24/23, at 27. The trial court also noted the MVR captured Appellant's very upset, agitated, and excitable demeanor upon being stopped. *Id.* at 7; *see also* N.T., 11/2/22, at 18-20; *id.* at 24 (highlighting Appellant's mood swings and complaints of dry mouth). The trial court also noted that Appellant was very talkative, and upon exiting the vehicle, began to make excuses for being unable to maintain the lane of travel. Trial Court Opinion, 4/24/23, at 7. In addition, Trooper Zimmerman testified that Appellant's pupils were dilated and did not respond to a flashlight despite the bright lights in the parking lot. N.T., 11/2/22, at 23, 28.[7]

Trooper Zimmerman testified he conducted field sobriety tests and ARIDE testing, having been trained in, and having experience with, both. *See* N.T., 11/2/22, at 11-12; *see also id.* at 32 (Trooper Zimmerman explaining he is trained to look for indicators of impairment, but not to make pass/fail conclusions regarding the tests). During this testing, Trooper Zimmerman observed several indicators of impairment on the walk and turn test, one indicator of impairment on the one-leg stand test, and no indicators of

---

[7] Trooper Zimmerman specifically testified that Appellant did not smell like alcohol, and Appellant denied alcohol consumption. *See* N.T., 11/2/22, at 23.

impairment on the lack of convergence test. *See id.* at 32-36. On the Modified Romberg Balance test, Appellant displayed eyelid tremors and severe hand tremors. *Id.* at 36, 40, 52.

Trooper Zimmerman then testified,

[b]ased on the totality of everything I saw, from [**Appellant's**] **driving**, to my contact with him, to my testing with him, I was under the impression that he was not safe to drive a vehicle and that he was under the – he was being affected by **some sort of** illegal substance.

*Id.* at 41-42 (emphasis added). Contrary to Appellant's assertion, Trooper Zimmerman did not reach his conclusion based on eye and hand tremors alone. Rather, Trooper Zimmerman relied on the totality of his observations, including Appellant's mood swings, dilated pupils, ongoing complaints of dry mouth, general excitability and agitation, difficulty in performing field sobriety tests, and indicators displayed during the ARIDE tests. *See id.*; *see also* Trial Court Opinion, 4/24/23, at 4 (noting Trooper Zimmerman's experience in conducting field sobriety tests over 100 times), 35 (referencing Trooper Zimmerman's training and experience).

Critically, unlike the officer in *Gause*, "Trooper Zimmerman did not voice an opinion as to which controlled substance he suspected [Appellant] had ingested…." Trial Court Opinion, 4/24/23, at 34. *Cf. Gause*, 164 A.3d at 539 (concluding the officer's opinion that eyelid tremors resulted from marijuana use required specialized knowledge and was thus inadmissible as lay opinion). Rather, Trooper Zimmerman opined that Appellant was impaired

- 15 -

by **a** stimulant.[8] N.T., 11/2/22, at 42. As the trial court observed, "Trooper Zimmerman testified that based on his training, experience, and numerous prior interactions with impaired individuals, he believed [Appellant] was acting consistent with someone that was impaired by a controlled substance stimulant." ***Id.*** at 34-35.[9]

Upon careful review, we conclude the trial court did not err or abuse its discretion by admitting Trooper Zimmerman's lay opinion that Appellant was under the influence of a stimulant, which impaired his ability to safely operate

_____

[8] The term "stimulant" encompasses a variety of substances and refers to the effect of the drug. As the Drug Enforcement Agency has reported, stimulants speed up the body's systems, and high-dose use of stimulants is frequently associated with, among other symptoms, agitation, hostility, and aggression. ***See*** https://www.dea.gov/sites/default/files/2020-06/Stimulants-2020.pdf (last accessed Mar. 21, 2024). Additionally, the Alcohol and Drug Foundation has stated, "stimulants are a class of drugs that speed up messages traveling between the brain and body." https://adf.org.au/drug-facts/stimulants/ (last accessed Mar. 21, 2024). "Stimulants include caffeine, nicotine, amphetamines and cocaine." ***Id.*** The symptoms of heavy use include, *inter alia*, anxiety, tension, tremors, and seizures. ***Id.***

[9] Finally, we recognize that Appellant refused a blood test. As this Court has stated,

> we cannot ignore the fact that [the a]ppellant refused a blood test. Appellant seems to take the position that: (1) expert testimony is always necessary in illegal-drug cases; [and] (2) the Commonwealth did not produce an expert…. [T]he flaw in this argument is that it would permit cocaine users (and presumably other illegal drug users) to drive under the influence of those drugs and avoid prosecution entirely simply by refusing a blood test. We refuse to countenance this absurd result.

***DiPanfilo***, 993 A.2d at 1268 (footnote omitted).

- 16 -

the vehicle. Trooper Zimmerman's opinion was based on his observations and informed by his training and experience as a police officer. Under the totality of these circumstances, expert testimony was not necessary to support Appellant's section 3802(d)(2) conviction. Therefore, Appellant is not entitled to relief on his first claim.

In his second and third issues, Appellant challenges the sufficiency of the evidence supporting his DUI conviction. We address these claims together. Appellant asserts the Commonwealth failed to establish that he operated a vehicle while under the influence of a drug. Appellant's Brief at 12. Appellant points out that troopers did not observe drugs in his vehicle. *Id.* at 13-14. According to Appellant, the trial court's reliance on Trooper Zimmerman's opinion in finding that Appellant was under the influence of a stimulant was manifestly improper. *Id.* at 14.

Appellant also argues there was insufficient evidence to establish that he operated a vehicle while impaired by a controlled substance. *Id.* Appellant emphasizes his inconsistent performance on the field sobriety tests. *Id.* at 14-15. He further states, "the reliability of the walk-and-turn test could have been affected by [his] leg injuries." *Id.* at 14. Appellant claims his failure to maintain a single lane while driving, without more, did not sufficiently establish that he was impaired. *Id.* at 15.

When reviewing sufficiency challenges, we adhere to the following:

> The standard we apply in reviewing the sufficiency of the evidence
> is whether viewing all the evidence admitted at trial in the light

most favorable to the verdict winner, this is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. LaBenne**, 21 A.3d 1287, 1289 (Pa. Super. 2011)

(citation omitted).

Appellant was convicted under Section 3802(d)(2) of the Vehicle Code,

which provides:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

* * *

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

This Court has explained,

Section 3802(d)(2) does *not* require that any specific amount or specific quantity of the drug be proven in order to successfully prosecute under that section. Rather, the Commonwealth must

- 18 -

simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle.

*Commonwealth v. Hutchins*, 42 A.3d 302, 307 (Pa. Super. 2012) (emphasis in original; citations and quotation marks omitted). Under Section 3802(d)(2), a drug need not be detectable in a defendant's body. *Griffith*, 32 A.3d at 1237. Further, expert testimony is not required to establish that a defendant's inability to drive safely was caused by a drug or combination of drugs. *Id.* at 1238. "Instead, impairment evidence should be drawn from the totality of the factual circumstances." *Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023). "Rather than insist on proof that may lie exclusively within Appellant's own bloodstream, which he refused to provide, we will instead turn to the totality of the Commonwealth's direct and circumstantial evidence." *DiPanfilo*, 993 A.2d at 1268.

Instantly, the trial court explained,

it is clear to this [c]ourt that there was more than sufficient evidence to establish that [Appellant] drove under the influence of the controlled substance that rendered him incapable of safe driving. First, there is no dispute that [Appellant] was driving the vehicle on the night in question. Second, it is clear based on the testimony of [Trooper Zimmerman] and the [c]ourt's viewing of the MVR that [Appellant] was incapable of safe driving. The only question is whether controlled substances caused [Appellant's] inability to safely operate the vehicle, **and the Commonwealth met its burden by proving this element through circumstantial evidence**.

… The combination of the [MVR] and Trooper Zimmerman's extremely credible testimony established [Appellant] was under the influence of a controlled substance that rendered him incapable of safe driving.

- 19 -

Despite [Appellant's] argument that his driving was safe because he would move away from the center lanes when oncoming vehicles were approaching, his driving was actually extremely hazardous. Trooper Zimmerman observed [Appellant's] vehicle as he was headed back to the barracks after the end of his shift. The trooper observed [Appellant] failing to maintain his lane of travel, swerving left over the center line and right over the fog line severely enough that the trooper became concerned and activated his MVR. After the MVR was activated, the truck crossed the center line four times and the white fog line nine times. During one of the times the truck crossed the fog line, the entire vehicle crossed over the line and was completely outside the lane of travel. It was nighttime and the roadway was curvy and hilly. Oncoming traffic was present at the time. Because of the location, Trooper Zimmerman was unable to stop [Appellant] as soon as he wanted to do so because stopping on a curve or a hill would have been dangerous to [Appellant], himself, and [the] motoring public. …

[Appellant's] testimony that his difficulty driving the truck and swerving was due to his unfamiliarity with the truck and a recent steering box replacement, is simply not credible. Just like on the MVR[,] where [Appellant] started making excuses as to why he did nothing wrong and telling the trooper whom he should be contacting on [Appellant's] behalf, [Appellant's] testimony at trial appeared to be a litany of excuses that was not supported by evidence. …

[Appellant's] excuses continued throughout the field sobriety tests, beginning when he was not doing well on the walk and turn test[,] and his excuses can be heard in the MVR. Prior to starting the tests, Trooper Zimmerman asked [Appellant] if he had any physical problems or health issues that would interfere with the performance of the tests, including a walking test. [Appellant] stated that he had meniscus [*sic*] in his left knee that only hurts when he is seated. However, at the time of trial, [Appellant] testified that "the consistency of the leg is I could be walking for 100 yards and at 101 yards, it could give out." [Appellant] lacks credibility.

During the walk and turn test, [Appellant] immediately raised his arms for balance, stumbled and staggered a couple of times while trying to get started, stepped off the line, took extra

- 20 -

steps, did an improper turn, stopped again, had difficulty resetting his feet, stumbled forward a step or two, stepped back a couple of times before starting the second set of return steps, raised his arms for balance again, and stepped off the line on the return steps. Prior to starting the test, [Appellant] is observed getting out of the truck and walking around the parking lot with no limping or leg issues observed. Once [Appellant] began the test and could not perform properly[,] he can be heard blaming his performance on his alleged knee issues.

[Appellant] performed well on the one-leg stand test, except he failed to keep his arms at his side as instructed. During the Modified Romberg Balance test, [Appellant] estimated the passage of thirty seconds in approximately thirty-five seconds, had severe eyelid tremors, and had twitching hands. **In addition to the hazardous driving and the test indicators, there were other factors within the totality of the circumstances that supported the sufficiency of the evidence for** [**Appellant's**] **conviction**.

[Appellant] was very agitated and upset when he exited the truck. He immediately started making excuses, and became more agitated and upset when [Trooper Zimmerman] tried to question him. [Appellant] gave the trooper a list of people to call to vouch for him, including the Oxford [m]agistrate…. Based on his training and experience, Trooper Zimmerman testified that [Appellant] was not acting in a way he expected someone to act when pulled over. At first [Appellant] denied drug and alcohol use, but later stated that marijuana may be found in his system as he used it within thirty days.

In addition to the above, [Appellant's] physical appearance was [] evidence that he was under the influence of a controlled substance. [Appellant's] eyes were dilated under the bright lights of the gas station parking lot and his pupils did not constrict when Trooper Zimmerman shined his flashlight directly in [Appellant's] eyes. [Appellant's] demeanor including mood swings, his multiple complaints of dry mouth while at the stop, and his refusal of the blood test[10] were additional factors noted in the totality of the

_____

[10] Vehicle Code section 1547(e) provides:

*(Footnote Continued Next Page)*

circumstances. Trooper Zimmerman testified that based on his training, experience, and numerous prior interactions with impaired individuals, he believed [Appellant] was acting consistent with someone that was impaired by a controlled substance stimulant.

Trial Court Opinion, 4/24/23, at 27-30 (footnote and emphasis added; brackets and citations to record omitted).

We discern no error. The trial court found Trooper Zimmerman credible, and Appellant not credible. *See LaBenne*, 21 A.3d at 1289 ("[T]he finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."); *Commonwealth v. Andrulewicz*, 911 A.2d 162, 166 (Pa. Super. 2006) (stating "it is for the fact finder to make credibility determinations"). Our review confirms that the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient for the trial court, as finder of fact, to determine that Appellant operated a vehicle while under the

---

**(e) Refusal admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced into evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

influence of a controlled substance to a degree which impaired his ability to drive safely. Thus, there is no merit to Appellant's sufficiency challenges.

Judgment of sentence affirmed.

Judge Sullivan joins the Opinion.

P.J.E. Bender files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/10/2024