J-A16024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                         :             PENNSYLVANIA
                         :
         v.                 :
                         :
                         :
STEPHEN M. CHAPMAN           :
                         :
            Appellant       :     No. 1164 WDA 2023

Appeal from the Judgment of Sentence Entered September 26, 2023
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000604-2022

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:             **FILED: July 30, 2024**

Stephen M. Chapman (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count each of driving under the influence (DUI) of a drug or combination of drugs, and possession of drug paraphernalia.[1]  We affirm.

The trial court summarized the factual and procedural history:

> On January 18, 2022, Corporal Sherry Hogue of the Pennsylvania State Police [(PSP)] conducted a traffic stop of [Appellant].  The reason for the stop was that snow was obscuring the license plate[,] and the third brake light on [Appellant]'s vehicle was out.  [Appellant] was the driver of the vehicle and Helen Babinsack [(Babinsack)] was the passenger.  Corporal Hogue knew Babinsack through previous interactions.  Corporal Hogue ordered [Appellant] out of the vehicle.  She noticed that [Appellant] had watery, bloodshot eyes, constricted pupils, and

---

[1] 75 Pa.C.S.A. § 3802(d)(2); 35 P.S. § 780-113(a)(32).  Appellant pled guilty to two related traffic offenses, which are not at issue in the instant appeal.

powder on his nose and inside his nostril. Corporal Hogue conducted [standardized] field sobriety tests[ (SFSTs)]; [Appellant] showed signs of impairment during these tests. At this point, [Appellant] was arrested. [PSP Trooper Turkalj,[2] who responded as backup, searched Appellant incident to arrest, and found a stamp bag of suspected heroin or fentanyl in Appellant's wallet.] Corporal Hogue read the [PennDOT] DL-26 [chemical warnings] form to [Appellant], who refused to submit to a blood test.

As a result, [Appellant] was charged with DUI[—]Controlled Substance,[3] Possession of Drug Paraphernalia, and two summary traffic offenses.

On October 28, 2022, [Appellant] filed an Omnibus Pre-Trial Motion to suppress all evidence derived from the [traffic] stop. Following a hearing, the suppression court denied the motion.

After a bench trial on July 18, 2023, the trial court[4] convicted [Appellant] of all charges, and sentenced him on September 26, 2023[, to an aggregate six to sixty months' incarceration].

[Appellant] filed a timely notice of appeal on September 27, 2023, after which the court directed him to file a [Pa.R.A.P.] 1925(b) concise statement[ of errors complained of on appeal]. He timely complied on October 24, 2023.

Trial Court Opinion, 11/13/23, at 1-2 (footnotes in original omitted; three footnotes added; some capitalization modified).

On appeal, Appellant presents the following five issues:

---

[2] Trooper Turkalj's first name does not appear in the certified record.

[3] The Commonwealth alleged this was a second offense DUI based on Appellant's prior acceptance of Accelerated Rehabilitative Disposition (ARD).

[4] The Honorable Chase G. McClister adjudicated Appellant's suppression claims, and The Honorable James J. Panchik, President Judge, presided over Appellant's nonjury trial.

1. Did the suppression court err in determining that the traffic stop in this case was not unlawfully extended past its original mission without reasonable suspicion or probable cause?

2. Did the suppression court err in determining that the police had probable cause to arrest [Appellant,] and [for] denying his motion to suppress the proceeds of that arrest?

3. Did the suppression court err[] in denying [Appellant]'s motion to suppress[,] where the video and audio of the traffic stop were recorded in violation of the Wiretap Act?

4. Did the Commonwealth fail to present sufficient evidence that [Appellant] was under the influence of a controlled substance to a degree that he was unable to safely operate a moto[r] vehicle?

5. Was [Appellant]'s sentence as a "second offense" DUI offender[,] where his prior successful completion of the ARD program was counted as his "first offense[,]" illegal?

Appellant's Brief at 6-7.

Appellant's first three issues challenge the suppression court's denial of

his suppression motion. Our standard of review

is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. McMahon***, 280 A.3d 1069, 1071 (Pa. Super. 2022)

(quoting ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017)).

"It is within the suppression court's sole province as factfinder to pass on the

credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Clemens***, 6 A.3d 373, 378 (Pa. Super. 2013). "We are highly deferential to the suppression court's factual findings and credibility determination[s]." ***Commonwealth v. Carmenates***, 266 A.3d 1117, 1123 (Pa. Super. 2021) (*en banc*). "If the record supports the suppression court's findings, we may not substitute our own findings." ***Id.***

In his first issue, Appellant argues that Corporal Hogue did not have reasonable suspicion or probable cause to extend the initial, lawful traffic stop to conduct a drug or DUI investigation. Appellant's Brief at 23. Appellant argues:

> C[orporal] Hogue was authorized to make the stop, inform [Appellant] of the problems [with his vehicle], identify him, ensure his vehicle was properly insured and registered, and either write him a ticket or issue him a warning. But she did none of those things. C[orporal] Hogue approached the vehicle, recognized that she knew [Appellant]'s passenger from prior encounters, and immediately removed [Appellant] from the vehicle and began to ask him about his possession (or that of his passenger) of illegal drugs. She reasoned with [Appellant] that if he cooperated with her, and told her whether [Appellant] or the passenger had drugs, he could be on his way, but if he didn't comply, she would arrest him. The trajectory of the stop was instantly transformed into a drug investigation, and only later into a DUI investigation.

***Id.*** at 25.

The Commonwealth counters that Corporal Hogue's testimony, detailing her observations through the lens of her extensive experience, amply supported the suppression court's conclusion that Corporal Hogue justifiably extended the traffic stop. Commonwealth Brief at 6. The Commonwealth

argues Appellant "blatantly ignores Corporal Hogue's testimony as to her initial observations, which is the factual testimony that the suppression court relied on in denying [Appellant]'s motion to suppress." *Id.* at 8.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Rice*, 304 A.3d 1255, 1260 (Pa. Super. 2023) (citation omitted).

Our Courts have long recognized interactions between law enforcement and the public fall within three categories: mere encounters, investigative detentions, and custodial detentions. *Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019). An investigative detention "constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot." *Id.* at 1199 (citations omitted). "To assess reasonable suspicion, we consider the totality of the circumstances known to the officer at the time of the investigative detention." *Commonwealth v. Rivera*, 311 A.3d 1160, 1164 (Pa. Super. 2024) (citation omitted).

> In determining whether police had reasonable suspicion to initiate an investigative detention, the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate.
>
> This Court has recognized reasonable suspicion exists only where the officer is able to articulate specific observations which,

in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

To demonstrate reasonable suspicion, the detaining officer must articulate something more than an inchoate and unparticularized suspicion or hunch. To determine whether reasonable suspicion exists, we examine the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen.

*Id.* at 1164-65 (quoting *Commonwealth v. Cunningham*, 287 A.3d 1, 8-9 (Pa. Super. 2022)).

We recently reiterated that "[a]n officer may prolong a traffic stop if, before completing the purpose of the stop, the officer develops additional suspicion. Further reasonable suspicion can support continued investigation…." *Commonwealth v. Garcia*, 311 A.3d 1138, 1146 (Pa. Super. 2024) (citations omitted). We have observed, "[a]n investigative detention may last as is necessary to confirm or dispel such suspicion." *Commonwealth v. Cauley*, 10 A.3d 321, 326 (Pa. Super. 2010) (citation and quotation marks omitted).

In rejecting Appellant's first issue, the suppression court found the following:

Corporal Hogue observed [Appellant] as having watery, bloodshot eyes and constricted pupils when she approached the vehicle, which she understood from her training and experience to be signs of impairment. The [suppression c]ourt finds that Corporal Hogue had reasonable suspicion to believe that [Appellant] was under the influence of a controlled substance, and that the investigatory detention[,] where she conducted [SFSTs,] was valid. [Appellant] showed signs of impairment during the

- 6 -

[SFSTs,] and **Corporal Hogue observed that** [**Appellant**] **had powder on his nose and inside his nostril**. …

Generally, traffic stops do not constitute a custodial detention … due to their temporary nature and occurrence in public. Corporal Hogue had reasonable suspicion based on articulable facts that [Appellant] was driving under the influence[,] which means that she had the lawful authority to detain [Appellant]for the purposes of conducting [SFSTs]. ….

Suppression Court Opinion, 1/23/23, at 2-3 (footnotes omitted; emphasis added).

The suppression court's analysis is supported by the record and free of legal error. Our review confirms: Corporal Hogue had been a member of the PSP for eight years, conducted approximately 2,000 traffic stops, made between 700 to 800 DUI arrests, and was a certified drug recognition expert. N.T., 1/17/23, at 6. After stopping and approaching Appellant, Corporal Hogue immediately observed "his pupils to be constricted[,]" and "[h]is eyes were watery and bloodshot." *Id.* at 8. Based upon her training and experience, Corporal Hogue knew that "[c]onstricted pupils mean[] that you are under the influence of only one drug category[,] and that is a narcotic analgesic." *Id.* Supporting her conclusion, Corporal Hogue observed "a powder on the outside of [Appellant's] nostril and inside his nostril **prior** to conducting" SFSTs, which she knew from her training and experience was indicative of illegal drug use. *Id.* at 10 (emphasis added). When Corporal Hogue conducted a pat down of Babinsack, prior to requesting Appellant to submit to SFSTs, she recovered an uncapped, full syringe. *Id.*

The suppression court acted within its discretion when it credited Corporal Hogue's testimony, **see Clemens**, 6 A.3d at 378, and the totality of the circumstances supplied Corporal Hogue with reasonable suspicion that Appellant was driving under the influence of a drug or combination of drugs. **See Rivera**, 311 A.3d at 1164; **see also Commonwealth v. Prizzia**, 260 A.3d 263, 272 (Pa. Super. 2021) (deeming a defendant's passenger's possession of heroin a relevant factor in a reasonable suspicion analysis). Accordingly, Corporal Hogue did not unlawfully extend the traffic stop. **See Cauley**, 10 A.3d at 326. Appellant's first claim merits no relief.

In his second issue, Appellant argues law enforcement arrested him without probable cause, and "[a]s such, all proceeds of that arrest should have been suppressed." Appellant's Brief at 27. Appellant maintains "[h]is safe driving, coupled with lack of stumbling, slurring words, or erratic behavior[,] are too weighty to be overcome by any clues of impairment observed during the [SFSTs], two of which strongly indicated no impairment." **Id.** at 30.

Any arrest or custodial detention "must be supported by probable cause." **Commonwealth v. Bathurst**, 288 A.3d 492, 497 (Pa. Super. 2023) (citation omitted).

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge[,] and of which the officer has reasonably trustworthy information[,] are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, **we require only a probability, and not a *prima facie* showing, of criminal**

- 8 -

**activity**. Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training.

***Commonwealth v. Sears***, 311 A.3d 34, 39 (Pa. Super. 2024) (citations and quotation marks omitted; emphasis added).

Instantly, in addition to the above-described indicia of drug intoxication, Corporal Hogue requested Appellant to submit to SFSTs, and Appellant complied. N.T., 1/17/23, at 11. At the January 17, 2023, suppression hearing, the Commonwealth moved for admission of a video and audio recording depicting Appellant's performance on those tests, and the suppression court admitted the exhibit without objection. ***Id.*** at 12; ***see also*** Exh. 1.

Concerning the SFSTs, Corporal Hogue testified as follows: During the walk-and-turn test, Appellant was unable to maintain his balance, and failed to take the appropriate number of steps. ***Id.*** at 13. During the one-leg stand test, Appellant "was swaying, [and] he wasn't looking at his foot as instructed." ***Id.*** After Corporal Hogue explained to Appellant how to perform the Modified Romberg test,[5] he proved "incapable of following simple

---

[5] Corporal Hogue testified: "The [Modified Romberg] test is to tilt your head back, close your eyes. When you hear me[] say begin, estimate 30 seconds in your head. When you feel like 30 seconds has passed, you will simply tilt your head forward for me, open your eyes and tell me you are finished…." N.T., 1/17/23, at 38.

instructions." *Id.* at 37. Ultimately, Corporal Hogue concluded that Appellant "showed signs of impairment during [SFSTs]." *Id.* at 16.

Considering the totality of the circumstances (which includes the powder observed on Appellant's nose and Appellant's poor performance on SFSTs), as well as Corporal Hogue's training and experience involving DUI traffic stops, we conclude that Corporal Hogue had probable cause to arrest Appellant for DUI. *See Commonwealth v. Salter*, 121 A.3d 987, 995 (Pa. Super. 2015) ("The law is well settled that reasonable grounds to arrest does not require the failure of field sobriety tests. Nonetheless, performing poorly may be sufficient for a finding of impairment." (internal citations, quotation marks, and brackets omitted)). Thus, Appellant's second issue fails.

In his third issue, Appellant argues the suppression court erred when it denied his "motion to suppress where the video and audio of the traffic stop were recorded in violation of the Wiretap Act."[6] Appellant's Brief at 31. Appellant's argument hinges on Wiretap Act Section 5706(b)(4), which requires the PSP to publish recording equipment standards on an annual basis. *See* 18 Pa.C.S.A. § 5706(b)(4). Appellant contends that the PSP "did not publish such equipment standards in 2022[,]"[7] and, as a result, the

---

[6] *See* 18 Pa.C.S.A. §§ 5701-5782.

[7] As the Commonwealth points out in its brief, the PSP **did**, in fact, publish a list approving mobile video recording (MVR) system equipment standards on April 3, 2021, which purported to cover the period of time "until the next
*(Footnote Continued Next Page)*

suppression court erred in refusing to suppress the contents of the video and audio recording of the traffic stop. Appellant's Brief at 32. Appellant's argument fails for several reasons.

"When the question [is] one of statutory interpretation, our scope of review is plenary and the standard of review is *de novo*." ***Commonwealth v. Grove***, 170 A.3d 1127, 1141-42 (Pa. Super. 2017). "The object of our interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a).

> "We are mindful that … the best indication of the legislature's intent is the plain language of the statute." ***Commonwealth v. Walter***, 93 A.3d 442, 450 (Pa. 2014) (citation omitted). "When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute under the pretext of pursuing its spirit." ***Id.***, citing 1 Pa.C.S.A. § 1921(b). However, only "when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c) of the [Statutory Construction Act]." ***Id.*** at 450-451, citing 1 Pa.C.S.A. § 1921(c).

***In re D.M.W.***, 102 A.3d 492, 494 (Pa. Super. 2014). Further, "[s]tatute headings may be considered in construing a statute." ***Commonwealth v. Arnold***, 284 A.3d 1262, 1270 (Pa. Super. 2022) (citing 1 Pa.C.S.A. § 1924

---

comprehensive list is published[.]" Commonwealth Brief at 17 (quoting 51 Pa.B. 1945). Appellant apparently takes issue with the fact that no bulletin was published in 2022, at the time of his traffic stop. Regardless, Appellant's claim fails as Section 5706 affords him no relief irrespective of the bulletin's publishing date (discussed *infra*).

("The title and preamble of a statute may be considered in the construction thereof.")).

"In general, the Wiretap Act prohibits the interception, disclosure or use of any wire, electronic or oral communication." ***Commonwealth v. Byrd***, 235 A.3d 311, 319 (Pa. 2020) (citation and quotation marks omitted). To establish a violation of the Wiretap Act to warrant the suppression of evidence, the defendant bears the burden of showing, "*inter alia*, that he possessed an expectation that the communication would not be intercepted and that his expectation was justifiable under the circumstances." ***Commonwealth v. Mason***, 247 A.3d 1070, 1081 (Pa. 2021) (citation, quotation marks, and brackets omitted).

> Placing this burden on defendants is consistent with the plain language of the Wiretap Act and comports with common sense, as the Commonwealth would have no incentive to demonstrate that a defendant has a justifiable expectation that [his] oral communication would not be intercepted, and the Wiretap Act does not require the Commonwealth or any other party to prove a negative, *i.e.*, that the claimant did not have a justified expectation that [his] oral communication would not be intercepted under the circumstances of the case.

***Id.***

Turning to the applicable statute, Section 5706(b)(4) provides:

**(b) Responsibility.--**

*** *** ***

(4) The [PSP] shall annually establish equipment standards for any electronic, mechanical or other device which is to be used by law enforcement officers for purposes of recording a communication under circumstances within paragraph (2) of the

- 12 -

definition of "oral communication" in section 5702 (relating to definitions). The equipment standards shall be published annually in the Pennsylvania Bulletin.

18 Pa.C.S.A. § 5706(b)(4). Significantly, Section 5706 is entitled, "Exceptions to prohibitions in possession, sale, distribution, manufacture or advertisement of electronic, mechanical or other devices." *Id.* § 5706.

Section 5702 defines "oral communication" as follows:

**"Oral communication." Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation**. The term does not include the following:

(1) An electronic communication.

(2) A communication made in the presence of a law enforcement officer on official duty who is in uniform or otherwise clearly identifiable as a law enforcement officer and who is using an electronic, mechanical or other device which has been approved under section 5706(b)(4) (relating to exceptions to prohibition in possession, sale, distribution, manufacture or advertisement of electronic, mechanical or other devices) to intercept the communication in the course of law enforcement duties. As used in this paragraph only, "law enforcement officer" means a member of the [PSP]….

18 Pa.C.S.A. § 5702 (emphasis added).

Appellant argues that Section 5706(b)(4) acts as an exception to the Wiretap Act's prohibition against surreptitious recordings of oral communications. *See* Appellant's Brief at 32. However, the statute governing exceptions to the **interception** of communications is Section 5704. *See* 18 Pa.C.S.A. § 5704 (detailing numerous circumstances where no prior court approval is required for the interception and disclosure of communications).

By its very title, Section 5706 applies to prohibitions on, *inter alia*, the **possession** of recording devices. 18 Pa.C.S.A. § 5706; *see also* 18 Pa.C.S.A. § 5705(1) (criminalizing the possession of an electronic, mechanical or other device, knowing "that the design of such device renders it primarily useful for the purpose of the **surreptitious interception** of a wire, electronic or oral communication." (emphasis added)); 1 Pa.C.S.A. § 1924.

Regarding his need to establish a reasonable expectation of privacy, Appellant baldly asserts he "possessed an expectation of non-interception when he was stopped by C[orporal] Hogue." Appellant's Brief at 31. However, Appellant's conversation with Corporal Hogue occurred in public, in the parking lot of a business, and in front of other individuals. *See Pennsylvania State Police v. Grove*, 161 A.3d 877, 902 (Pa. 2017) (holding conversations captured on a trooper's MVR did not contain "oral communications" where "[t]he conversations occurred in broad daylight … on a public roadway, … [and] took place within earshot and easy view of bystanders or passersby."). Appellant did not explain in his suppression motion, at the suppression hearing, or in his appellate brief the basis for his expectation of privacy, or why that expectation was reasonable. *See* Suppression Motion, 10/28/22, at 15-16; N.T., 1/17/20, at 1-52; Appellant's Brief at 31-34. Accordingly, Appellant failed to meet his burden of establishing a violation of the Wiretap Act, *see Mason*, 247 A.3d at 1081, and the suppression court did not err in

denying his suppression motion on this basis. Appellant's third claim merits no relief.

In his fourth issue, Appellant challenges the sufficiency of the evidence underlying his DUI convictions under 75 Pa.C.S.A. § 3802(d)(2). Appellant argues the Commonwealth failed to establish that he "was under the influence of a drug to a degree that impaired [his] ability to **safely** operate [his] motor vehicle." Appellant's Brief at 35 (emphasis in original).

Our standard of review for sufficiency claims is well settled:

> Faced with such a challenge, an appellate court should determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to allow the fact finder to conclude that the Commonwealth established the challenged criminal element of the offense beyond a reasonable doubt.

*Commonwealth v. Stevenson*, 283 A.3d 196, 205 n.3 (Pa. 2022). "[T]he Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence[.]" *Yandamuri*, 159 A.3d at 514 (citation omitted). Further, "[t]his Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed." *Commonwealth v. McFarland*, 278 A.3d 369, 381 (Pa. Super. 2022) (quotation omitted).

Pennsylvania's Motor Vehicle Code defines driving under the influence of a drug or combination of drugs as follows:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\*\*\*

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

We have explained,

Section 3802(d)(2) does *not* require that any specific amount or specific quantity of the drug be proven in order to successfully prosecute under that section. Rather, the Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle.

***Commonwealth v. Nestor***, 314 A.3d 863, 874 (Pa. Super. 2024) (citation omitted; emphasis in original).

[I]mpairment evidence should be drawn from the totality of the factual circumstances. Rather than insist on proof that may lie exclusively within Appellant's own bloodstream, which he refused to provide, we will instead turn to the totality of the Commonwealth's direct and circumstantial evidence.

***Id.*** (citations and quotation marks omitted).

The trial court explained in its Pa.R.A.P. 1925 opinion that it

found Corporal Hogue credible when she testified that she observed that [Appellant] had watery, bloodshot eyes, constricted pupils, shaky hands, powder in his nose, eyelid tremors and swaying, and that these factors, coupled with [Appellant's] performance on the [SFSTs], were all indicators of impairment.

- 16 -

In addition, Corporal Hogue was credible[8] when she testified that although [Appellant] initially agreed to undergo a blood draw, he changed his mind during transport. The fact that he refused to submit to chemical testing is further evidence of his impairment. [**See** 75 Pa.C.S.A. § 1547(e) ("[T]he fact that the defendant refused to submit to chemical testing … may be introduced in evidence along with other testimony concerning the circumstances of the refusal[.]").] The [trial] court was thus convinced, beyond a reasonable doubt, that [Appellant] had violated 75 Pa.C.S.A. § 3802(d)(2), which provides that an individual may not drive, operate or be in actual physical control of the movement of [a] vehicle if he is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to do so.

Trial Court Opinion, 11/13/23, at 8-9 (footnote omitted; one footnote added).

Our review confirms the trial court's findings are supported by the record and its conclusion is sound. The trial court found Corporal Hogue credible, and we will not invade its province as fact finder. **See Nestor**, 314 A.3d at 876 ("The finder of fact, while passing upon the credibility of witnesses … is free to believe all, part or none of the evidence." (citation, quotation marks, and brackets omitted)). The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish that Appellant operated a vehicle under the influence of a drug or combination of drugs, which impaired his ability to drive safely. Accordingly, Appellant's fourth issue merits no relief.

---

[8] Significantly, Corporal Hogue also testified, "I did ask [Appellant] when [was] the last time he used[,] and I believe he related, last night." N.T., 7/18/23, at 10.

- 17 -

In his final issue, Appellant argues that his sentence as a repeat DUI offender was illegal, because the trial court imposed the mandatory sentence for a second-offense DUI[9] based on Appellant's prior acceptance of ARD. **See** Appellant's Brief at 38. Appellant acknowledges that "[t]his challenge is currently foreclosed by adverse precedent …." **Id.** (citing **Commonwealth v. Moroz**, 284 A.3d 227 (Pa. Super. 2022) (*en banc*)).

Our standard of review for challenges to the legality of a sentence is well settled:

> Challenges to an illegal sentence can never be waived …. Generally, an illegal sentence is one that was imposed without authority. Because the legality of a sentence presents a pure question of law, our scope of review is plenary, and our standard of review is *de novo*.

**See Commonwealth v. Lowe**, 303 A.3d 810 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted).

In 2020, a panel of this Court held that the DUI sentencing provision, which increases a defendant's sentence for prior acceptance of ARD, ran afoul of United States Supreme Court precedent prohibiting the judicial finding of a "fact" at sentencing that statutorily increases a defendant's punishment. **See Commonwealth v. Chichkin**, 232 A.3d 959, 968 (Pa. Super. 2020) (citing **Alleyne v. United States**, 570 U.S. 99, 114-15 (2013)). However, in 2022, this Court, sitting *en banc*, overruled **Chichkin**. **See Moroz**, 284 A.3d at 233.

---

[9] **See** 75 Pa.C.S.A. § 3806(a).

- 18 -

In particular, the **Moroz** Court held that "the portion of Section 3806(a), which equates prior acceptance of ARD to a prior conviction for purposes of imposing a Section 3804 mandatory minimum sentence, passes constitutional muster." **Id.**; **see also Commonwealth v. Richards**, 284 A.3d 214, 220 (Pa. Super. 2023) (*en banc*) (same).[10]

We decline Appellant's invitation to reject binding precedent. **See Commonwealth v. Hind**, 304 A.3d 413, 418 (Pa. Super. 2023) ("[A]ll Pennsylvania courts, appellate and trial courts alike, are duty bound to apply the law in effect at the time of a decision." (citations omitted)). Consequently, the trial court did not err when it treated Appellant's prior acceptance of ARD as a first offense for sentencing purposes. Appellant's final issue merits no relief.

---

[10] In **Richards**, the Pennsylvania Supreme Court granted *allocatur* concerning the following issues:

> (1) In light of **Alleyne**[, ] is it not unconstitutional to consider an acceptance of ARD as a prior offense for sentencing purposes without the procedural protections afforded by **Alleyne**, *i.e.*, a prior offense can only be determined by proof beyond a reasonable doubt?
>
> (2) Is it not fundamentally unfair and a violation of due process to equate a prior acceptance of ARD with a prior conviction for purposes of a recidivist mandatory minimum sentence even though that acceptance involved no proof of guilt beyond a reasonable doubt?

**Commonwealth v. Richards**, 294 A.3d 300 (Pa. 2023) (*per curiam*).

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/30/2024